COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Huff and Senior Judge Haley

EMANUEL SUTTON McDORMAN

v.      Record No. 0885-13-3

HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT

SABRINA DWAN McDORMAN

v.      Record No. 0886-13-3

HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 5, 2013

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

(Anne M. Mauldin, on brief), for appellant Emanuel Sutton
McDorman.  Appellant submitting on brief.

(W. Andrew Harding, on brief), for appellant Sabrina Dwan
McDorman.  Appellant submitting on brief.

(Rachel Errett Figura, Assistant County Attorney; Michael D.
Beckler, Guardian *ad litem* for the minor children, on briefs), for
appellee.  Appellee and Guardian *ad litem* submitting on briefs.

Emanuel Sutton McDorman (father) and Sabrina Dwan McDorman (mother) appeal orders

terminating their parental rights to their children.  Both father and mother argue that the trial court

erred in terminating their parental rights and approving the goal of adoption because father and

mother substantially remedied the causes of removal pursuant to Code § 16.1-283(C)(2).  Upon

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reviewing the record and briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm the decisions of the trial court.

## BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Father and mother are the parents to a daughter and a son. The parties had a history of domestic violence and substance abuse. On June 29, 2010, mother pled guilty to distribution of methamphetamine, as an accommodation, and was sentenced to five years in prison, with all five years suspended. Mother received three years of supervised probation. Pursuant to her probation, mother was prohibited from using alcohol or illegal drugs. Despite this prohibition, mother admittedly drank alcohol daily.

Mother and father separated. In September 2011, the children lived with father, and mother lived with her boyfriend, Fred Cromer. On September 20, 2011, the Harrisonburg Rockingham Social Services District (the Department) received a complaint regarding the children's supervision and the adequacy of their home. The children reported to the social worker that their home was dirty and they spent a lot of time with their grandparents. The children also told the social worker that they have been left home alone before, although they were six and nine years old. The social worker went to the home. Father showed the social worker the grandfather's apartment instead of his apartment. The next day, father admitted to the social worker that he did not show her his apartment because it was "a mess."

On September 21, 2011, the social worker went to Cromer's house, where mother was staying. Since there were allegations that mother abused drugs, the social worker went with the

drug task force. The police searched Cromer's house and found two guns, two sets of scales, smoking devices, and numerous empty containers of bath salts.

On September 22, 2011, the Department received a complaint regarding a sexual abuse allegation concerning the parties' daughter and the grandfather. The parties' daughter told the social worker and police that she watched "sex movies" with her father and that he made her drink liquor. She also told the social worker that her father's friend smoked "out of a glass thing."

The Department sought an emergency removal order for both children, which was granted, and placed them in foster care.

The Department required that both mother and father obtain stable and safe housing, as well as stable employment. Both were to refrain from the use of alcohol and illegal drugs. They also were ordered to cooperate with the Department and visit with the children.

The Department referred father and mother for a psychological evaluation and parenting classes. Father was referred to individual counseling for anger management.

While the children were in foster care, the condition of father's home was inconsistent. It would be messy and dirty, and then, father would clean it. Then, it would deteriorate. In September 2011, father's home was in poor condition. It was dirty and unsanitary. He subsequently cleaned it, but by April 2012, the condition of father's home deteriorated again. In March 2013, the social worker found the condition of the home to be improved.

In March 2012, father was hospitalized for psychotic episodes after using bath salts. In late April 2012, father admitted to having a substance abuse problem and sought admission to Boxwood Recovery Center for twenty days.

Mother was offered in-patient treatment for her alcoholism and referred to RMH Life Recovery Aftercare. Despite these services, in March 2012, mother tested positive for amphetamines and marijuana, and she admitted abusing bath salts. In April 2012, mother's

- 3 -

probation officer filed a major violation report against mother. On June 6, 2012, the circuit court found that mother was in violation of her probation. The circuit court revoked the time served and recommitted mother to supervised probation. In addition, the circuit court extended the probation for one year and ordered that mother enter and successfully complete the Rubicon Treatment Program.

On November 11, 2012, the Department filed petitions for the termination of mother's and father's parental rights. The juvenile and domestic relations district court terminated the father's and mother's parental rights and approved the goal of adoption. Both parents appealed to the circuit court.

After hearing all of the evidence and argument, the circuit court terminated father's and mother's parental rights to their children pursuant to Code § 16.1-283(C)(2) and approved the goal of adoption. These appeals followed.

## ANALYSIS

Father and mother argue that the trial court erred in terminating their parental rights and approving the goal of adoption because they substantially remedied their situations, which led to the children's removal.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The trial court terminated father's and mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The Department removed the children from their parents' custody because of inadequate and unsafe housing, lack of supervision, and alleged abuse and/or neglect. In addition, the Department was concerned about the parents' substance abuse.

The trial court held that the parents were unable to substantially remedy the situations which led to the removal of their children within the requisite time period. The trial court found, "There's no question there's been plenty of time, plenty of help, plenty of assistance to turn the corner." The trial court noted that the parents' situations had improved, but they were not in a position to care for the children.

Mother argues that she improved her situation because she relocated to Alexandria and moved out of the area where she was influenced by drugs, father, and Cromer. She presented evidence that she obtained affordable housing in Northern Virginia, just prior to the hearing in circuit court.

Meanwhile, father argues that he, too, improved his situation. He offered evidence of his substance abuse recovery. He contends that since he has been sober, he has been able to maintain his house. Father also argues that the domestic violence between him and mother ended, and they were no longer a couple.

[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The Department presented evidence of mother's and father's substance abuse history, domestic violence history, lack of stable employment, and lack of adequate housing. At the trial, the Department argued that the parents had not substantially improved their situations and were not in a position to care for their children. For example, although mother had been sober for a few months, she had just found suitable housing and was working on stabilizing her life. She was not ready to care for the children. Although father attended parenting classes, the clinician found he made "minimal progress" with his parenting skills and had a "lack of willingness or ability to change." He took minimal responsibility for what happened with the children before they came into foster care.

Each of the children had difficulties as they entered foster care. The parties' son displayed extreme tantrums, was physically aggressive, and damaged property. He was diagnosed with post-traumatic stress disorder and past physical abuse. Like her brother, the parties' daughter displayed anger and aggression. She harmed and killed animals. She exposed herself to other children. She was diagnosed with adjustment disorder with mixed disturbances of emotions and conduct, and chronic attention deficit hyperactivity disorder. She also showed signs of past sexual abuse. The children have participated in counseling and require constant supervision. Since entering foster care, the children have improved greatly.

When the trial court issued its opinion from the bench, it complimented mother and father on the improvements that they had made in their lives. However, the trial court noted that it took the parents a long time to make those improvements and they were not in a position to care for

the children.  Meanwhile, the children were doing well in foster care and needed stability.  The trial court stated, "It's simply a matter of delay and the delay has gone on too long."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Considering the circumstances of this case, the trial court did not err in terminating mother's and father's parental rights and approving the goal of adoption.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>